**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TIMOTHY BARRETT, Individually and On Behalf of All Others Similarly Situated,**<br><br>Plaintiff,<br><br>v.<br><br>**WESLEY FINANCIAL GROUP, LLC; and INFOLINK COMMUNICATIONS GROUP,**<br><br>Defendants. | Case No.: 13-cv-00554-LAB-KSC<br><br>**REPLY TO MOTION FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23(B)(2) AND (B)(3)**<br><br>**Date:** September 15, 2014<br>**Time:** 12:00 p.m.<br>**Place:** 14A<br>**Judge:** Hon. Larry Alan Burns |

Kazerouni Law Group, APC
Costa Mesa, California

## I. INTRODUCTION

Wesley Financial Group, LLC's ("Defendant" or "Wesley Financial") brief in opposition to the Motion for Class Certification is based on nothing more than numerous unfounded assertions and an alarming number of red herrings.[1] This TCPA action is an excellent candidate for class certification, as the primary defense typically raised by TCPA defendants is not applicable here, since Wesley Financial has not put forward any evidence that any putative class member provided their prior express consent to the prerecorded marketing calls from Defendant. Significantly, the consent defense has been waived by Wesley Financial because it was not raised in the Answer to the First Amended Complaint ("FAC"), and Wesley Financial has not sought leave to amend to include such affirmative defense. Plaintiff's Motion for Class Certification should be granted for the reasons already explained in Plaintiff's moving papers and for the reasons explained herein.

## II. DEFENDANT'S RED HERRINGS DO NOT COME CLOSE TO SHOWING THAT CLASS CERTIFICATION IS INAPPROPRIATE

Wesley Financial attempts to defeat class certification by raising and arguing an alarming number of red herrings, all of which do not come close to demonstrating that any of the requirements for class certification have not been met.

### A. Red Herring Number One: Economic/Emotional Injury

Defendant begins its opposition brief by arguing that Plaintiff has not proven and cannot show economic injury from being charged for the call at issue. *See* Def.'s Opp., 6:2-13. This argument misses the mark. First, "to plead a TCPA claim, Plaintiffs need only allege two elements: (1) a call to a cellular telephone; (2) via an ATDS." *Robbins v. Coca-Cola-Company*, 2013 U.S. Dist. LEXIS 72725, *5 (S.D. Cal. May 22, 2013). Thus, a TCPA plaintiff need not prove "economic injury" to obtain relief for violation of § 227(b)(1)(A) of the TCPA. *See*

---

[1] Defendant does not challenge the prerequisites of numerosity and adequacy, which must mean that Defendant concedes these prerequisites.

*Gutierrez v. Barclays Group,* No. 10–CV–1012–DMS, 2011 WL 579238, at *6 (S.D. Cal. Feb. 9, 2011); *Manfred v. Bennett Law, PLLC*, 2012 U.S. Dist. LEXIS 173935, *6 (S.D. Fla. Dec. 7, 2012); *Agne v. Papa John's Intern., Inc.,* 286 F.R.D. 559, 570 (W.D. Wash. 2012); *Lozano v. Twentieth Century Fox Film Corp.,* 702 F. Supp. 2d 999, 1009–10 (N.D. Ill. 2010).[2] Second, the putative class is not based on any claim of economic injury. *See* Pl.'s Memo., 5:17-21 (proposed class definition). Therefore, Defendant's argument that the issue of economic injury presents an individualized inquiry defeating class certification is incorrect, as there is no such requirement.

Similar to the economic injury argument by Defendant, Defendant argues that class certification cannot be based on "inherently individualized emotional … damages" (Def. Opp., 7:4-5). Again, a showing of emotional damages is not required to prove a TCPA claim, and Plaintiff has never even alleged emotional damage from the call. Moreover, the class definition does not hinge on class members suffering any emotional damage. Thus, this argument is baseless.

**B.    Red Herring Number Two: Defendant's Pipeline System**

Wesley Financial misleadingly argues that its own, in-house, records system does not show a call to Plaintiff's cell phone. This is misleading because the calls at issue were not manual calls placed using Wesley Financial's own Pipeline system (*see* McDowell Depo., 23:14-24:5 (Pl.'s Ex. B)), but rather the autodialed and prerecorded calls placed by InfoLink Communications Group ("InfoLink" a/k/a VoiceLogic) on behalf of Defendant using InfoLink's system (*see* McDowell Depo., 63:21-64:3; Exhibit M, p. 03; *see also* Exhibit P. ¶ 25). Thus, it is of no moment that Defendant's internal call records do not show a call to Plaintiff using Defendant's Pipeline system. Plaintiff has presented credible

---

[2] Although the FAC alleges that Plaintiff was charged for the call, this is not required; and, Plaintiff is not pursuing an economic damage claim. FAC, ¶ 31.

Kazerouni Law Group, APC
Costa Mesa, California

evidence that InfoLink placed the calls at issue for Wesley Financial using InfoLink's dialing system. *See* Exhibits D, E, G, H, I, J, M and P.

### C. Red Herring Number Three: Call Spoofing Allegations

Defendant argues that the FAC does not allege call spoofing (Def.'s Opp., 6:20-7:2), apparently believing that this is fatal to Plaintiff's claims. It is not. Plaintiff clearly alleges that InfoLink (a/k/a VoiceLogic) placed the calls on behalf of Wesley Financial as its agent. It makes no difference whether that agent employed call spoofing or not, as the calls were placed by the agent to Plaintiff's cell phone and the putative class members' cell phone. *See* Pl.'s Memo., 3:6-5:9.[3]

### D. Red Herring Number Four: Wesley Financial No Longer Employs Michael Bowling Or Uses VoiceLogic

It appears that Defendant is arguing that corrective actions taken after the fact somehow absolve Defendant of liability for the allegedly unlawful calls. It does not. That Defendant no longer employs Michael Bowling (who hired VoiceLogic to make the calls) and no longer uses VoiceLogic does not mean the calls at issue are not a violation. Defendant may be liable for the calls even if it stopped breaking the law at some point after the fact. And, liability is a merits issue that is not appropriate for adjudication on a motion for class certification. *See Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292, 294 (N.D. Cal. 2013).

## III.   THE PRIOR EXPRESS CONSENT DEFENSE HAS BEEN WAIVED

As explained in Plaintiff's moving papers, Defendant has waived the defense of prior express consent by not raising it in its Answer. Defendant's asserted reservation of rights (*see* Def.'s Opp. 13:9-12) is inappropriate and does

---

[3] An allegation of call spoofing would be a detailed factual allegation that is not required under the liberal federal pleading standard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009) (explaining the Fed. R. Civ. P. 8 standard). It is also disingenuous for Defendant to claim it has "no knowledge of telephone number (206) 337-1111" (Def.'s Opp. 11:9-11), as an email from VoiceLogic indicated such call spoofing number would be used. *See* Exhibit J, p. 04 (InfoLink 000031).

Kazerouni Law Group, APC
Costa Mesa, California

not save Defendant here. *See Glover v. Mary Jane M. Elliott, P.C.*, 2007 U.S. Dist. LEXIS 73605, *14 (W.D. Mich. Oct. 2, 2007) (such "exercise[] in throat-clearing add[s] nothing to the answer"). Defendant has not even sought leave to amend the Answer to alleged prior express consent, and could not do so this late in the proceedings for lack of good cause. Lastly, Defendant has admitted obtaining the telephone numbers from third party vendors and not from the consumers themselves, which means that Defendant could not have obtained prior express consent. Therefore, the Court should not consider Defendant's arguments based on the defense of prior express consent, as such argument has been waived.

## IV. THE PROPOSED CLASS IS NOT A FAIL-SAFE CLASS AND IS READILY ASCERTAINABLE

Defendant argues that the proposed class is essentially a fail-safe class because it is allegedly merits-based. This is completely incorrect. Here, the class definition does not turn on consent and does not require adjudication on the merits in order to determine class membership. Moreover, the class definition must include objective factors such as a "call" to a "cellular" telephone using an "ATDS" or an "artificial or prerecorded voice," as a TCPA class pursuant to 47 U.S.C. § 227(b)(1)(A) could not be defined any other way. Defendant is basically arguing that there can never be a TCPA class action under such section, but this is not true, as this very Court certified a similar class action in *Van Patten v. Vertical Fitness Group, LLC et al.*, 3:12-cv-01614-LAB-MDD (S.D. Cal. Nov. 8, 2013).

The class definition is not based on any subjective factors, contrary to Defendant's claim. Whether the class members received a "call" on his or her "cell" phone by prohibited means (i.e., an ATDS or an artificial or prerecorded voice) are objective facts, and Defendant has not shown otherwise. *See Lemieux v. Schwan's Home Serv.*, 2013 U.S. Dist. LEXIS 127032, *14 (S.D. Cal. Sept. 5, 2013) (certifying TCPA class action and stating, "[w]hether a customer received an autodialed or artificial/prerecorded call may be determined objectively."). It is

not difficult for class members to determine whether they received a prerecorded call on their cell phone on March 1, 2013.

Defendant has presented no evidence to show that any of the putative class members received calls on a landline or a VoIP telephone number as opposed to a cell phone number. Notably, Plaintiff's technology consultant has already scrubbed the list of calls to find only cellular telephone numbers. *See* Hansen Decl., ¶¶ 3-6, filed previously. Also, Plaintiff's technology consultant can easily determine whether a number was ported on that single day on March 1, 2013. *See* Hansen Decl. In Supp. of Reply, ¶ 3, filed concurrently.

Again, the claim that class members must show economic or emotional injury is false and has been explained above, which means such arguments do not in any way mean that the proposed class is not ascertainable. *See* Section II, A. Plaintiff also incorporates the arguments in Section II, B and C, here.

Significantly, Defendant does not deny that Defendant produced a list of consumers' telephone numbers and addresses that may be used to readily send actual notice to the class members if a class is certified. Moreover, this Court in *Barani* approved the reverse look-up method in preliminarily approving a TCPA class action settlement. *See Barani v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 49838, *27 (S.D. Cal. Apr. 9, 2014). Therefore, the class definition is properly defined and the class members are clearly ascertainable.

The cases cited by Defendant, which were not analyzed, are distinguishable because the class definition hinged on "unauthorized" language (*see Gannon*) or the plaintiff did not provide a reliable method to identify the class members through their cell phone number (*see Jamison*). This is not the case here.

## V. THERE ARE SEVERAL COMMON ISSUES OF LAW AND FACT

While Defendant argues at length that there are zero common issues of law and fact, it appears clear to Plaintiff that Defendant is really arguing that common issues do not predominate (*see* Def.'s Memo., pages 15-16), as even Defendant's

opposition brief identifies common issues of law and fact. *See id*. at 16:15-16; 19:1-3. The commonality requirement is clearly satisfied, as shown in Plaintiff's moving papers. *See* Pl.'s Memo., 14:3-16:1. Defendant's argument about the supposed "non-common" ways in which Defendant called the putative class members is an attempt to distract the Court from the evidence that Defendant, through VoiceLogic, called the putative class members by the same means.

## VI. DEFENDANT HAS FAILED TO SHOW HOW THE PLAINTIFF'S CLAIMS ARE NOT TYPICAL OF THE CLASS

Defendant argues against a finding of typicality, but such argument is based only on speculation as to whether a given telephone number had been ported on March 1, 2013, whether Voice over IP was used, and whether the calls were forwarded to a cell phone. However, Defendant has not provided any evidence that this even occurred, or that it occurred so often that it would make Plaintiff's claims a-typical. As Plaintiff explained in his moving papers, it is difficult to imagine how Plaintiff's claims could be any more typical of the proposed class. *See* Pl.'s Memo., 16:2-17:21.

## VII. DEFENDANT HAS NOT IDENTIFIED ANY PERTINENT INDIVIDUALIZED ISSUES; THE COMMON ISSUES PREDOMINATE

Although Wesley Financial argues that the issue of prior express consent defeats a finding of predominance (Def.'s Opp., page 18), it has not pointed to a single *pertinent* individual question of law or fact. Even if Wesley Financial could show some individualized issues, common issues in this TCPA case would still predominate. Individual questions need not be absent. *See In re MDC Holdings Sec. Litig.*, 754 F. Supp. 785, 807 (S.D. Cal. 1990). The focus is on "the relationship between the common and individual issues" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Vinole*, 571 F.3d at 945 (quoting *Hanlon*, 150 F.3d at 1022). Defendant merely cites to a list of cases that have denied class certification

without taking the time to engage in any analysis, apparently hoping the Court will simply deny class certification because other courts have denied TCPA cases in the past. Plaintiff has already explained why the common issues predominate. *See* Pl.'s Memo., 20:23-24:7.

Defendant opposition brief offers nothing more than assertions and conjecture as to whether some of the putative class members may have consented to the calls. This is plainly insufficient to defeat the predominance requirement, especially when faced with actual evidence from Plaintiff on this issue. *See Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389, 393 (N.D. Ohio 2012) (without some evidence of individual consent, defendant cannot realistically argue that individual issues regarding consent prevent a finding of predominance).

Whether there is prior express consent is an affirmative defense. *Grant v. Capital Mgmt. Servs., L.P.*, 449 Fed. Appx. 598, 600 (9th Cir. 2011). Defendant has failed to and cannot meet its burden on this point, having waived the defense (*Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. Mont. 2005) ("Under the Federal Rules of Civil Procedure, a party, with limited exceptions, is required to raise every defense in its first responsive pleading, and defenses not so raised are deemed waived.")) and having not introduced any evidence whatsoever that any of the putative class members provided the requisite consent (*see Hawk Valley, Inc. v. Taylo*r, 2014 U.S. Dist. LEXIS 45709, *21 (E.D. Pa. Mar. 31, 2014) ("there is no record evidence that [defendant] obtained express permission or invitation from any of the businesses in its database")). Defendant merely asserts that there are different ways in which putative class members may have consented to the calls. *See* Def.'s Opp., 9:14-18. There is absolutely no factual support for Defendant's speculation that the putative class members gave their cell phone numbers to Wyndham "while knowing that Wyndham sold this information to third-parties" (Def.'s Opp. 15:4-5). Defendant admitted having *no* evidence that Plaintiff is a past or present Wyndham customer or even owned a timeshare. *See*

Kazerouni Law Group, APC
Costa Mesa, California

Pl.'s Memo., 4:23-5:2. There is also no evidence that the putative class members provided their phone number via Defendant's website (Def.'s Opp., 17:2-5).

Defendant also appears to have not actually looked at the proposed class definition, as there is no "without their express consent" language (*see* Def.'s Opp., 15:12), but rather language of "who were not customers of Wesley Financial Group, LLC." *See* Pl.'s Memo., 5:17-21.

## VIII. INJUNCTIVE RELIEF IS APPROPRIATE, AND AN INJUNCTION WILL HELP ENSURE DEFENDANT'S FUTURE COMPLAINCE

Injunctive relief is expressly permitted by the TCPA. Yet Defendant argues that Plaintiff is not concerned with injunctive relief, despite a request for such in the FAC (Dkt. No. 20, Prayer for Relief) and the motion for class certification. Defendant's decision to fire Michael Bowling and not to use VoiceLogic in the future to make calls does not mean that Defendant will comply with the TCPA absent an injunction. Without an injunction, Defendant would be free to resume it unlawful practice of purchasing consumers' cell phone numbers from third party vendors and then calling those numbers using an autodialer or prerecorded voice without their prior express consent. Imposing a requirement on Defendant to obtain prior express written consent to place such calls serves to deter future violations (*see Olney v. Progressive Cas. Ins. Co.*, 2014 U.S. Dist. LEXIS 9146, *8 (S.D. Cal. Jan. 24, 2014)) and protect consumers whose privacy has been invaded by Defendant's unlawful calls. The Ninth Circuit Court of Appeals approved a TCPA injunctive relief class in *Meyer v. Portfolio Recovery Assocs., LLC*, 2011 U.S. Dist. LEXIS 156610 (S.D. Cal. Sept. 14, 2011). Furthermore, hybrid certification is not uncommon in consumer protection cases. *See* Pl.'s Memo., 23:26-24:1. Thus, Plaintiff may seek statutory damages class and injunctive relief.

## IX. A TCPA CLASS ACTION HERE IS THE SUPERIOR METHOD OF ADJUDICATING 3,105 PUTATIVE TCPA CLAIMS

Defendant argues categorically that TCPA claims should only be litigated individually rather than as a class action. Setting aside the small recovery for a

negligent violation of only $500 with no provision for attorneys' fees, this Court recently certified a similar TCPA case in *Van Patten*. Plaintiff here only received one call. For the invasion of privacy (*Meyer*, 696 F.3d at 951) for an unsolicited prerecorded call on Plaintiff's cell phone for marketing purposes, $500 is not disproportionate. There is also no indication of other TCPA actions against Defendant, which supports superiority. *See Kaye v. Amicus Mediation & Arbitration Group, Inc.*, 2014 U.S. Dist. LEXIS 72377, *40 (D. Conn. May 28, 2014). Further, in *Van Patten*, this Court declined to follow the non-binding *Forman* decision; and, Defendant mischaracterizes its quote from *Murphey*.

Numerous courts have found that the class action mechanism is appropriate and a superior method of adjudicating such TCPA claims. *See Agne v. Papa John's Int'l*, 286 F.R.D. 559, 571 (W.D. Wash. 2012) ("Five hundred dollars is not sufficient to compensate the average consumer for the time and effort that would be involved in bringing a small claims action…"); *A & L Indus. v. P. Cipollini, Inc.*, 2013 U.S. Dist. LEXIS 142463, *17-18 (D.N.J. Oct. 2, 2013) ("A class action is simply a better available method to fairly and efficiently resolve the claims of potential class members in this case…"); *see also Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) ("If plaintiffs cannot proceed as a class, some-perhaps most-will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover."). Therefore, the superiority requirement is satisfied here.

## X. DEFENDANT'S DUE PROCESS ARGUMENT IS PREMATURE

Although Congress placed no cap on statutory damages under the TCPA, Defendant argues that an award of statutory damages would "shock the conscience" and be "unconscionable".[4] Plaintiff understand this argument to be a

---

[4] Regardless of the size of the company, a violation of the TCPA is a violation of the TCPA. Defendant has not offered any evidence that even a partial statutory award would not be recoverable here. In any event, awarding injunctive relief under Fed. R.

due process challenge, but a due process challenge at the class certification stage is premature, since there has been no determination on the merits. *See Van Patten*, *supra*, 20:18 ("the Court finds this argument to be somewhat premature"). Importantly, as noted by the court in *Agne*, 286 F.R.D. at 572, "[t]he Ninth Circuit has held that <u>the size of a potential award of statutory damages is not a valid basis for refusing to certify a class action</u>." (emphasis added).

Assuming, *arguendo*, that an award of statutory damages were to violate due process, the remedy would be to lower the amount of recovery, not deny class certification. *See Kaye*, 2014 U.S. Dist. LEXIS 72377 at *42 ("Even in a truly serious case, however, the remedy is not to decertify the class but to reduce the award."); *see also Moeller v. Taco Bell Corp.*, 2004 U.S. Dist. LEXIS 32183, n. 1 (N.D. Cal. Dec. 7, 2004). A TCPA defendant should not be let off the hook merely by virtue of the large extent of its violations, otherwise companies, whether large or small, would have in incentive to engage in mass violations. Importantly, the TCPA is a remedial statute designed to protection consumers. *See Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. Pa. 2013).

## XI. CONCLUSION

In sum, this is an excellent case for class certification. Plaintiff respectfully requests that the Court grant Plaintiff's motion for hybrid class certification against Wesley Financial.

Respectfully submitted,
**KAZEROUNI LAW GROUP, APC**

Date: July 28, 2014

By: /s/ Abbas Kazerounian
Abbas Kazerounian
*Attorney for Plaintiff*

---

Civ. P. 23(b)(2) would permit Plaintiff to recover attorneys' fees, protect consumers from future violations, and would not impose a large monetary damages burden. Defendant is also incorrect that a maximum damage award for willful violation would be "over $6 Million" (Def.'s Opp. 21:13), as 3,105 x $1,500 is $4,657,500.